Filed 12/30/24  Martinez v. City of El Segundo CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SCOTT MARTINEZ,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>CITY OF EL SEGUNDO et al.,<br><br>　　　Defendants and Respondents. | B331206<br><br>(Los Angeles County<br>Super. Ct. No. 21STCV10637) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Christopher K. Lui, Judge.  Reversed.

Lipeles Law Group, Kevin A. Lipeles, Thomas H. Schelly, and Julian B. Bellenghi for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Jennifer M. Rosner, and Marek Pienkos for Defendants and Respondents.

_____

Plaintiff and appellant Scott Martinez sued defendants and respondents City of El Segundo (the City) and the El Segundo Fire Department (Fire Department) Fire Chief Chris Donovan, alleging Martinez suffered discrimination, harassment, and retaliation during his employment as a captain with the Fire Department.  Martinez alleged causes of action under the California Fair Employment and Housing Act (Gov. Code,[1] § 12900 et. seq.) (FEHA) and Labor Code section 1102.5, because respondents did not promote Martinez to battalion chief.  Martinez also claims that he was harassed and retaliated against for complaining about the misuse of consent decree funds and the alleged FEHA violations.

The trial court sustained respondents' demurrer and granted summary judgment in their favor, finding they had legitimate, nondiscriminatory reasons for not promoting Martinez.  It also found Martinez failed to meet his burden to show these reasons were pretextual.  In addition, the trial court found Martinez failed to offer evidence that his complaints regarding the consent decree funds and the alleged FEHA violations were a contributing factor in motivating respondents' actions.

For the reasons stated below, we reverse.

 **FACTUAL AND PROCEDURAL BACKGROUND**

I.      **Martinez's complaint**

Martinez's complaint alleged four causes of action:  (1) age discrimination in violation of section 12940, subdivision (a); (2) age harassment in violation of section 12940,

_____

[1]      All further undesignated statutory references are to the Government Code.

2

subdivision (j)(1); (3) retaliation for complaining about age discrimination in violation of section 12940, subdivision (h); and (4) retaliation in violation of Labor Code section 1102.5.

In support of the FEHA discrimination and harassment causes of action, Martinez alleged Donovan refused to promote Martinez into several vacant battalion chief positions beginning in February 2020, and instead promoted a substantially younger and less qualified captain. A battalion chief is an executive level position that delegates responsibilities to captains, oversees projects, supervises employees, and is second in command to the fire chief. He further alleged, in October 2020, Donovan refused to extend the battalion chief promotion eligibility list, depriving Martinez of any future possibility of promotion. Martinez further alleged that, in December 2020, Donovan instructed other battalion chiefs to unfairly criticize Martinez in his annual performance appraisal to further limit Martinez's opportunities for a promotion. Martinez also alleged Donovan instructed other battalion chiefs to undermine Martinez's authority to elicit further criticism of his performance.

Martinez's third and fourth causes of action for retaliation were premised on two complaints Martinez made to the City's human resources department (Human Resources). In April 2020, Martinez complained that Donovan and another battalion chief schemed to misuse funds allocated to the City under a federal consent decree. Then, in May 2020, Martinez complained that other battalion chief candidates had been given the questions and answers to the battalion chief examination prior to the exam, and he had been discriminated against based on his age. Martinez alleged these complaints motivated respondents to decline to extend the battalion chief promotion eligibility list and instead

3

hire an outside employee who was unqualified for temporarily vacant battalion chief position, among other things.

## II.    Demurrer

Respondents demurred to Martinez's complaint. The trial court overruled the demurrer with respect to Martinez's first, third, and fourth causes of action. However, it sustained the demurrer without leave to amend as to Martinez's second cause of action. The trial court ruled that Martinez had not sufficiently alleged hostile nonmanagerial conduct, and the alleged harassing behaviors identified by Martinez constituted permissible work-related criticisms or necessary personnel management decisions that could not form the basis of a harassment claim as a matter of law.

## III.    Respondents' motion for summary judgment

Respondents moved for summary judgment or, in the alternative, summary adjudication, on Martinez's remaining causes of action. Respondents argued they were entitled to summary adjudication on Martinez's FEHA age discrimination and retaliation causes of action on the grounds Martinez could not show a nexus between his age and the alleged adverse employment actions, and that respondents had legitimate nondiscriminatory reasons for not promoting Martinez that were not pretextual. Similarly, respondents argued they were entitled to summary adjudication on Martinez's retaliation cause of action under Labor Code section 1102.5. They contended that Martinez could not show his complaints regarding the consent decree funds and the alleged FEHA violations were contributing factors in their failure to promote Martinez as they had legitimate, independent reasons for not promoting him irrespective of his complaints.

4

### A. Respondents' undisputed facts

Respondents submitted the following undisputed facts in support of their motion.

#### 1. Martinez's career with the Fire Department

Martinez was hired by the Fire Department in March 1992 as a firefighter. He received successive promotions until his promotion to captain in 2009, which is the position he held until he retired in June of 2022 at the age of 55. All events that gave rise to Martinez's allegations occurred during his tenure as captain.

#### 2. Battalion chief vacancy

When a battalion chief position became vacant, the City began the process to fill the position in April 2019. The City administered an exam for the position, which consisted of tactical, oral, and written exercises.

Martinez, along with other candidates, took the exam on April 4, 2019. The City's municipal code provides that the promotion to battalion chief shall be from the top three eligible candidates. Based on the exam results, Deena Lee ranked first, Martinez ranked second, and Evan Siefke ranked third. Lee was promoted to battalion chief on April 29, 2019, which Martinez did not contest.

The candidate list was set to expire on April 9, 2020, with the option to extend the expiration date under the City's municipal code.

#### 3. Martinez's and Siefke's tenure as acting battalion chief

After Lee's promotion, the Fire Department's three Battalion Chief positions were held by Shawn Bonfield, Breck

Slover, and Lee.  In June 2019, Slover went on a long-term medical leave.  After temporarily assigning Lee and Bonfield to cover Slover's duties, Donovan gave Martinez and Siefke an opportunity to gain on-the-job experience by allowing them to work temporarily in the vacant battalion chief position.  Donovan also saw this as an opportunity for him and the other battalion chiefs to monitor Martinez's and Siefke's performance.

That same month, the City and the El Segundo Firefighters Association (Association) entered into a " 'Letter of Agreement,' " stating both Martinez and Siefke would be given the opportunity to assume the role of " '[a]cting' " battalion chief for a minimum of eight weeks, with no maximum duration, and each returning to their captain position without loss of seniority or other rights.

Martinez became acting battalion chief on August 20, 2019.  His tenure was completed eight to 10 weeks later.  Donovan stated Martinez underperformed as acting battalion chief during the assignment.  The parties dispute whether the duration of Martinez's tenure as acting battalion chief was eight or 10 weeks; however, the dispute is immaterial.

Siefke began his tenure as acting battalion chief in October 2019.  According to Donovan, from day one, Siefke significantly outperformed Martinez in the skills, abilities, and traits that Donovan looked for in a battalion chief.

Once Siefke had completed his eight weeks as acting battalion chief, Donovan spoke with Human Resources about keeping Siefke in the battalion chief position beyond the eight weeks.  Even though the Letter of Agreement between the Association and the City did not provide for a maximum period, Human Resources thought calling Siefke's out-of-rank promotion something other than " '[a]cting' " would be better, and

recommended classifying Siefke as a " '[p]rovisional' " battalion chief.

On January 16, 2020, Martinez sent an email to Bonfield, with an official request to meet with Donovan to discuss " 'the future of the [b]attalion [c]hief . . . position.' " In the e-mail, Martinez stated, " 'I have learned a lot while in the position of [b]attalion [c]hief and I still have a lot to learn about the position.' "

On January 29, 2020, Donovan separately interviewed Martinez and Siefke for the provisional appointment.

On February 10, 2020, Donovan again met with Martinez to discuss his readiness for the battalion chief position. For the meeting, Donovan prepared a set of questions and an analysis of Martinez's "[s]trengths, [w]eaknesses, [o]pportunities and [t]hreats." Under Martinez's weaknesses, Donovan noted Martinez had " '[v]ery poor people skills,' " and " 'in reality [Martinez] would much prefer being an administrative captain working on assignments and not having to deal with people.' " Donovan further noted Martinez " '[d]oesn't have a lot of situational awareness and lacks emotional intelligence.' "[2] Donovan also told Martinez that he needed to carry himself in a more professional manner, specifically, he advised Martinez to stop taking naps in the television room every day, and playing video games on his cell phone in front of others. Donovan also

---

[2]     Martinez disputed this fact in that it omitted the positive assessments of his performance. However, as discussed further below, Martinez submitted these positive critiques in support of his opposition papers.

7

discussed with Martinez the need to follow up and complete assignments.

### 4. Siefke's promotion to battalion chief

Donovan selected Siefke for the provisional appointment to battalion chief, and announced the appointment to all fire staff in February 2020. Donovan intended to make the appointment permanent once the position was formally vacant. Siefke was officially promoted in March 2020. He was 43 years old.

### 5. Donovan declines to extend the eligibility list

In March 2020, Bonfield went on a year-long medical leave, essentially vacating his position as battalion chief. Donovan assigned Siefke and Lee to cover Bonfield's duties.

Although it is not clear from the record, it appears the battalion chief eligibility list was extended for six months. The list then expired on October 8, 2020, and Donovan declined to extend the expiration date. At the time, Donovan did not anticipate any other battalion chief vacancies, and, even if there was a vacancy, he was not going to promote Martinez because he concluded Martinez performed poorly during the provisional appointment. Donovan claimed his decision had nothing to do with Martinez's age.

After the eligibility list expired, Martinez was out on injury leave and had medical issues that did not allow him to complete the testing process for the next promotional examination before his retirement in June 2022.

### 6. Martinez's 2020 performance review

In December 2020, Lee and Siefke jointly prepared Marinez's 2020 performance appraisal covering the period of October 1, 2019 through September 30, 2020. Lee and Siefke

collectively supervised Martinez for approximately seven months during the evaluation period. They rated Martinez " 'Standard' " on all but three categories on which he was rated " 'Above Standard.' " A " 'Standard' " rating means that the employee meets or occasionally exceeds his or her job requirements.

### 7. The City's appointment of an outside employee to a temporary battalion chief position

At some point, respondents determined Lee and Siefke needed additional help to cover Bonfield's duties, as well as their COVID-related responsibilities. In response, the City authorized the hire of a temporary battalion chief. Respondents decided to hire a part-time retired battalion chief from another agency. On March 8, 2021, the City hired Tim Butler, a retired battalion chief from Anaheim Fire and Rescue, as a part-time battalion chief on a temporary basis. Butler was hired during a state of emergency as additional assistance, not for a vacant position that the City created. Butler was 62 years old when he was hired, and his tenure ended on October 13, 2021.

### B. Martinez's opposition and additional material facts

Martinez submitted the following additional material facts in support of his opposition.

### 1. Misuse of consent decree funds and Martinez's complaints

In or around 2018, the Environmental Protection Agency and Chevron entered into a consent decree, arising from events at a Chevron refinery. Under the consent decree, Chevron would furnish funds to various California agencies, including the Fire Department, to purchase new safety-related equipment. In a

9

series of meetings with the City and the Fire Department employees, Donovan stated consent decree funds were to be used only to purchase new safety equipment. However, in January 2020, Donovan and Lee embarked on a scheme to use consent decree funds to purchase items outside this purview.

While both Martinez and respondents describe this purported scheme in considerable detail, the gist of Martinez's allegation is that Donovan and Lee attempted to receive a credit from a vendor for new safety equipment when in actuality that equipment had merely been cleaned and refurbished. This alleged "switcheroo" allowed Donovan to use consent decree funds for purposes unrelated to the purchase of new safety equipment.

In April 2020, Martinez complained to Human Resources that the alleged scheme violated the consent decree. An independent external investigator hired by the City and the Fire Department found that the allegations of misappropriation of the consent decree funds were unfounded. However, Martinez was never interviewed, and the investigator's report was never produced as evidence in this action.

Donovan knew that Martinez complained about the misuse of consent decree funds and that the City hired an external independent investigator to investigate Martinez's allegations. Six months after Martinez complained about the alleged misuse of the consent decree funds, Donovan declined to extend the battalion chief eligibility list.

> **2.    Martinez finds the questions and suggested answers to the battalion chief examination in Siefke's file**

In late 2019, Martinez found a document with the battalion chief exam questions and suggested answers in a filing cabinet in

10

the captains' office.  Martinez found the document in a drawer assigned to Siefke in a folder labeled " 'Mike Messina Leadership.' "

Martinez notified his union, which investigated and then met with Human Resources.  Human Resources confirmed these were the actual questions on the exam, and advised the union that Mike Messina, a contractor with the City, had given Siefke and Lee said answers prior to the exam.  On May 21, 2020, Martinez complained to the Human Resources that Siefke had been given the battalion chief exam questions and suggested answers.  Martinez further complained that Donovan failed to promote him because of his age.

An independent external investigator hired by the City found the allegations regarding the exam questions were unfounded.  However, the investigator never interviewed Mike Messina, and respondents never produced the investigator's report in discovery.  Donovan was aware that the City hired an external investigator to investigate Martinez's allegations.

After Martinez complained about Siefke and Lee receiving the questions and answers to the battalion chief exam, Siefke informed Donovan that Martinez could no longer be trusted and should not be promoted in light of the complaint.  Further, following the complaints, Donovan, Siefke and Lee made a concerted effort to undermine Martinez's authority by unjustly criticizing his performance in front of colleagues and subordinates.  They also countermanded orders given by him to his subordinates at active scenes in front of his colleagues and subordinates.

11

### 3. Martinez's 2020 performance review

On November 22, 2020, Martinez met with Lee and Siefke to review his annual written performance appraisal. To have an annual performance appraisal meeting with two battalion chiefs was unprecedented as the Human Resources' written policies provide that the appraisal is to be conducted by a single supervisor. Siefke and Lee unlawfully denied Martinez union representation during this meeting and refused to allow him to record the meeting.

On December 10, 2020 Martinez received his annual written performance review. At Donovan's instruction, Martinez was graded unfairly by being given " 'standard' " ratings instead of " 'above standard.' " Donovan's actions regarding the conduct of the November 22, 2020 meeting and the performance appraisal were motivated by Martinez's age and his complaints. Martinez submitted a rebuttal letter disputing the negative evaluation by Lee and Siefke, especially the comment that Martinez was " 'biding [his] time until retirement.' "

### 4. Donovan's ageist statements, maintenance of a color-coded department roster corresponding to employee's proximity to retirement, and alleged discrimination against other employees based on their age

Martinez contends Donovan repeatedly made remarks disparaging Martinez on account of his age. He told Martinez: " 'Hey, you're the old guy around here.' " He also said, " '[G]et on the bus. We're going to leave you behind.' " He also said, " 'You know, you old guys, you've got to get with these technology times. You've got to get with the future. You've got to move forward.' "

In 2018, Donovan created and maintained a document he referred to as a " 'department roster.' " The roster was color-coded, with red indicating those employees that had less than five years to retirement/service remaining, yellow for those employees that had between five and 10 years remaining, and green for those employees with more than 10 years of service remaining. Donovan admitted that there was a correlation between years of service remaining and an employee's age. He admitted one could estimate an employee's age range by reading the chart.

Martinez also contended that during Donovan's tenure with the City, and concurrently with Martinez, four other employees suffered age-related discrimination. These employees included: William Hatcher, Jr., an inspector who was told he was getting old and should retire; James Tulette, a captain who had several duties and leadership positions taken away and given to younger employees due in part to his age; Rick Towne, who was forced out, in part, due to his age; and Bonfield.

Despite noting Martinez's shortcomings in his February 2020 evaluation, Donovan stated Martinez demonstrated: " 'Strong administrative skills and completes an amazing amount of work compared to his [counterparts]. Understands the importance of analytics and data. Likes structure and order. Follows direction very well and will destroy anyone and anything in his path to gain results for projects. Good tactical skills and very thorough on emergency call. Cares deeply for the community and the service that the [Fire Department] provides. Has huge passion and will help anyone who needs assistance. Will give the shirt off of his back to assist others. Even though his people skills are weak, he is well liked given his genuine care and con[cern] for others.' "

13

### 5. The City appoints an outside employee to a temporary battalion chief position

In or around March 2021, the City created a vacancy for a new battalion chief position. Rather than placing Martinez, who was qualified for that position, the City hired Butler, who was not previously employed by the City, and had not taken the battalion chief exam. Further, Butler was not qualified for the position because he did not have an active emergency medical technician license for Los Angeles County, which was required for the position. Despite not having the license, Butler responded to two emergency medical calls while a battalion chief with the Fire Department.

On March 1, 2021, the Association protested the hiring of a part-time battalion chief from outside the Fire Department in lieu of hiring a qualified full-time employee from within the Fire Department. The Association stated its belief that Donovan and the City were misusing the municipal code " 'to hire an extra employee and violating protocol by appointing a part-time employee to a classified service outside of an emergency and in lieu of provisionally appointing a qualified employee.' "

The Association's president further testified he was aware of only one instance in which a lower ranked candidate on the battalion chief eligibility list was promoted ahead of a higher ranked candidate. According to the Association president, in the only instance where this occurred, the candidate who was passed over was under investigation and was ultimately found accountable for his actions.

Siefke stated that although it was Donovan's decision not to bring in Martinez as a provisional battalion chief, he told

14

Donovan that he no longer trusted Martinez because Martinez had " 'broke' " his " 'trust.' "

In late March or early April 2023, Lee told the Association president that in her upcoming deposition, she intended to testify truthfully that Martinez was the more qualified candidate and should have been promoted to battalion chief.

### C. The trial court grants summary judgment in favor of respondents

The trial court granted respondents' motion as to each of Martinez's remaining causes of action.

The trial court sustained a number of respondents' objections. It excluded Martinez's statement that after he complained about Siefke and Lee receiving the answers to the battalion chief test questions, Siefke informed Donovan that in light of the complaint Martinez could no longer be trusted and should not be promoted. It excluded Martinez's statements regarding other Fire Department veterans' beliefs about Donovan's ageist statements. It excluded Martinez's conclusory statement that respondents discriminated against him because of his age. It excluded Towne's statement that respondents engaged in a course of conduct designed to force older employees, particularly those over the age 50 to leave the Fire Department, so Donovan could replace those employees with substantially younger employees. It excluded the entire deposition testimony of Tulette and Hatcher on the grounds that the depositions were from other cases by persons who had not been shown to be unavailable as witnesses under Evidence Code section 1292, subdivision (a)(1). Last, it excluded Siefke's deposition testimony that he had told Donovan that he no longer trusted Martinez.

15

In granting respondents' motion on Martinez's FEHA age discrimination claim, the trial court found Martinez had established his prima facie case for age discrimination by showing respondents hired a substantially younger and less qualified employee, specifically, Siefke, over Martinez. It then found that respondents met their burden to show Martinez was not promoted for legitimate nondiscriminatory reasons based on Donovan's assessment of Martinez's performance as acting battalion chief. It further found that Butler's hiring did not qualify as an adverse employment action for Martinez, since Butler's position was temporary. Similarly, it found that respondents' alleged undermining of Martinez's authority did not constitute an adverse employment action. The trial court concluded: "It is clear from the foregoing that whatever positive attributes were noted about [Martinez] as a person, there were far greater negative issues regarding his potential ability to lead as [b]attalion [c]hief. The [c]ourt does not find sufficient evidence of pretext regarding [respondents'] prof[f]ered legitimate, non-discriminatory reason. [¶] Nor does [Martinez] cite evidence whereby a jury could reasonably infer that Donovan's actual reason for failing to promote [Martinez] to [b]attalion [c]hief was age discrimination."

The trial court also granted summary adjudication of Martinez's FEHA retaliation claim. It found because Siefke was promoted to battalion chief before Martinez complained of age discrimination and harassment, "there could be no causation as to this failure to promote." Further, "the hiring of Butler in March 2021 was for a temporary position on an emergency basis and would not have been a promotion for [Martinez]." It concluded, therefore, "[Martinez] fails to cite evidence

16

sufficient to raise a triable issue of material fact as to whether he suffered retaliation for complaining about age-related discrimination."

The trial court also granted summary adjudication of Martinez's Labor Code section 1102.5 retaliation cause of action. It found respondents established a legitimate nondiscriminatory reason that was not pretextual for not promoting Martinez. It further found Martinez had not established by a preponderance of the evidence that his purported protected activity was a contributing factor in the alleged adverse employment actions against him. The trial court noted that, while a triable issue of fact existed as to whether Donovan was displeased with Martinez's performance as acting battalion chief, there was no evidence to suggest Donovan acted with retaliatory motive due to Martinez complaining about the misuse of the consent decree funds. The trial court further relied on its previous findings that Siefke's promotion occurred before Martinez complained; therefore, Martinez could not show causation.

Martinez appealed.

## DISCUSSION

### I.    Summary judgment

"Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve

17

doubts concerning the evidence in favor of that party."  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 (*Yanowitz*).)

### A. Martinez's cause of action for age discrimination under FEHA

### 1. Governing law and standard of review

"California's FEHA provides in pertinent part:  'It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: [¶] (a) For an employer, because of . . . age . . . to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.' "  (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 214, quoting section 12940, subd. (a).)

"Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes.  [Citation.]  In particular, California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination, including age discrimination, based on a theory of disparate treatment." (*Guz v. Bechtel Nat., Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*).)

The test, established in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*), "reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially." (*Guz, supra*, 24 Cal.4th at p. 354.)  "Thus, by successive steps of

18

increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." (*Ibid.*)

"[T]he *McDonnell Douglas* test places on the plaintiff the initial burden to establish a prima facie case of discrimination. This step is designed to eliminate at the outset the most patently meritless claims, as where the plaintiff is not a member of the protected class or was clearly unqualified, or where the job he sought was withdrawn and never filled. [Citations.] While the plaintiff's prima facie burden is 'not onerous' [citation], he must at least show ' "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion.' " ' " (*Guz, supra*, 24 Cal.4th at pp. 354–355.)

To establish a prima facie case of discrimination, the plaintiff must provide evidence that "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." (*Guz, supra*, 24 Cal.4th at p. 355.) "If . . . the plaintiff establishes a prima facie case, a presumption of discrimination arises." (*Ibid.*) The burden then "shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to 'raise . . . a genuine issue of fact' and to 'justify a judgment for the [employer],' that its action was taken for a legitimate, nondiscriminatory reason." (*Id.* at pp. 355–356.) "If the employer sustains this burden, the presumption of discrimination

19

disappears.  [Citations.]  The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive.  [Citations.]  In an appropriate case, evidence of dishonest reasons, considered together with the elements of the prima facie case, may permit a finding of prohibited bias.  [Citations.]  The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff." (*Id*. at p. 356.)

"In addition, FEHA does not require proof that discriminatory animus was a 'but for' cause of an adverse action, only that it was a 'substantial motivating factor.'  [Citation.] 'Still, there must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the employer's actions.'  [Citation.] Ultimately, 'an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory.' " (*Martin v. Board of Trustees of California State University* (2023) 97 Cal.App.5th 149, 162 (*Martin*).)

### 2.    Analysis

Here, Martinez argues the trial court improperly granted summary adjudication on his FEHA discrimination claim by misapplying the *McDonnell Douglas* burden-shifting test. He argues that, after he sufficiently established his prima facie case for discrimination and then respondents provided evidence of a legitimate, nondiscriminatory purpose for not promoting him, the trial court erroneously ignored Martinez's evidence of pretext and discriminatory motive.  Respondents contend that the trial

court properly applied the burden-shifting test but found Martinez's evidence was insufficient to create a triable issue of fact regarding pretext. We find the trial court properly applied the burden-shifting test here; however, we disagree with its conclusion that Martinez's evidence was insufficient to create a triable issue of fact regarding pretext.

It is undisputed that Martinez met his initial burden to establish a prima facie case for discrimination. He offered evidence that he was in the protected age group, and was passed over for a promotion by a younger and arguably less qualified candidate. There was also evidence that the decision to promote an arguably less qualified candidate over a more qualified candidate had only occurred on one other occasion when the eligible candidate was under investigation. This evidence was sufficient to meet Martinez's relatively low burden of proof at the prima facie stage to establish a presumption of discrimination. (*Guz, supra*, 24 Cal.4th at p. 355.)

Respondents then rebutted the presumption by producing evidence that they declined to promote Martinez based on legitimate nondiscriminatory reasons; specifically, Martinez's poor performance as acting battalion chief and Donovan's evaluation of Martinez's weaknesses. (*Guz, supra*, 24 Cal.4th at pp. 355–356.)

Martinez then offered additional evidence of discriminatory motive and pretext to attack respondents' legitimate nondiscriminatory reasons. Most importantly, Martinez offered evidence that Donovan made a number of ageist statements directed to Martinez. Specifically, Martinez offered evidence that Donovan told him, "Hey, you're the old guy around here," "get on the bus. We're going to leave you behind. You know, you old

21

guys, you've got to get with these technology times. You've got to get with the future. You've got to move forward." For purposes of summary judgment, these statements, among other evidence, create a dispute of fact regarding the reason that Donovan refused to promote Martinez. A jury could conclude the ageist statements reflect Donovan's intent to discriminate, and the jury could choose to discredit Donovan's asserted reason that Martinez performed poorly in the temporary post. This is especially true here, where Martinez has offered other evidence that respondents' failure to promote him was an aberration, and there was evidence that he may have been more qualified than the candidate who was promoted as shown by the results of the battalion chief examination.

Respondents argue that Donovan's remarks are insufficient to show pretext because they were unrelated to any personnel decisions, made " 'off the cuff,' " and in jest. We are not persuaded by this characterization as it would require us to determine the weight of Donovan's remarks, which, at best, were ambiguous, and at worst, discriminatory. "Determining the weight of discriminatory or ambiguous remarks is a role reserved for the jury." (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 541 (*Reid*).)

Respondents also argue Donovan's purported ageist statements were merely "stray remarks," which, standing alone, cannot establish pretext. Our Supreme Court has criticized the stray remarks doctrine because it allows trial courts to improperly weigh evidence on summary judgment in FEHA discrimination cases. (*Reid*, *supra*, 50 Cal.4th at p. 541.) Rather, in evaluating remarks, courts must evaluate them within a totality of the circumstances to determine whether judgment as a

22

matter of law is appropriate. (*Ibid*.) This includes " ' "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case . . . ." ' " (*Ibid*.) Here, Martinez has not merely relied on Donovan's remarks to support his claim. As discussed above, Martinez also offered additional evidence, and thus he has presented evidence that potentially undermines respondents' proffered legitimate basis. He also points to evidence in the record that passing over a higher-rated candidate for promotion was an aberration within the Fire Department. (See *Martin*, *supra*, 97 Cal.App.5th at p. 163 [employee may avoid summary judgment on discrimination claim by demonstrating " ' "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action" ' "].)

Martinez also offered a color-coded department roster prepared by Donovan in which one could estimate an employee's age range by reading the chart. There, the employees with less than five years remaining to retirement were colored red, employees with 5 to 10 years remaining to retirement were yellow, and the employees with more than 10 years remaining to retirement were colored green. A jury could conclude that respondents were documenting employees based on age and making employment decisions based on age animus, as red can be understood to represent "stop" such as in a traffic light. Further, to the extent the document was ambiguous or respondents offered a legitimate reason for maintaining such a document, this is a dispute of fact that must be resolved by a factfinder. (See *Reid*, *supra*, 50 Cal.4th at p. 541.)

Notably, Martinez also offered other evidence that the decision not to promote him was pretextual. This included "me too" evidence of other Fire Department employees, who allegedly suffered age discrimination at the hands of Donovan. Martinez offered statements from three other Fire Department employees who were in his protected age group, and who claimed that Donovan had either pressured them to retire based on age or replaced them with substantially younger employees. While respondents assert this "me too" evidence is not admissible to meet Martinez's burden as it was not sufficiently similar to Martinez's circumstances, we disagree. Like Martinez, these other Fire Department employees made claims that Donovan discriminated against them based on age; therefore, they were admissible to show discriminatory motive.[3] (See *Pinter-Brown v. Regents of University of California* (2020) 48 Cal.App.5th 55, 96 [" '[M]e too' evidence can be admissible to prove intent, motive, and the like with respect to the plaintiff's own protected class"]; see also *Johnson v. United Cerebral Palsy/Spastic Children's Foundation of Los Angeles and Ventura Counties* (2009) 173 Cal.App.4th 740, 767 ["Dissimilarities between the facts related in the other employees' declarations and the facts asserted by plaintiff with regard to her own case go to the weight of the evidence, not its admissibility"].)

---

[3] We conclude it was error to exclude this evidence on Evidence Code section 1292 grounds at the summary judgment stage. (See *Williams v. Saga Enterprises, Inc.* (1990) 225 Cal.App.3d 142, 149, fn. 3 [holding trial court could consider the transcript of testimony from a related criminal case in deciding a motion for summary judgment].)

In sum, under the totality of the circumstances, Martinez's additional evidence was sufficient to create a triable issue of fact on whether respondents' legitimate nondiscriminatory reasons to not promote Martinez were pretextual.  (See *Guz, supra*, 24 Cal.4th at p. 356.)

**B.    Martinez's causes of action for retaliation under section 12940, subdivision (h)**

Martinez argues the trial court erred in granting summary judgment on his FEHA retaliation claim, when it found none of respondents' postcomplaint actions constituted an adverse employment action and Martinez failed to introduce pretextual evidence of intentional retaliation.  He argues Donovan's refusal to extend the eligibility list, Lee's and Siefke's unjust critiques and undeserved performance appraisal, and respondents' hiring of an outside employee to a vacant battalion chief position constituted adverse employment actions.  We agree with Martinez that he established triable issues of fact.

**1.    Governing law**

Section 12940, subdivision (h), "makes it an unlawful employment practice '[f]or any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.' "  (*Yanowitz, supra*, 36 Cal.4th at p. 1042, italics omitted.)  "[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action."  (*Yanowitz*, at p. 1042.)  "Once an employee establishes a prima

25

facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation ' " 'drops out of the picture,' " ' and the burden shifts back to the employee to prove intentional retaliation." (*Ibid.*)

### 2. Analysis

With respect to Martinez's prima facie burden, the parties do not dispute Martinez's complaints constituted protected activity. Rather, they dispute whether Martinez presented evidence that respondents took adverse employment actions against him and whether Martinez established a causal link between the protected activity and respondents' actions.

In support of his claim that he suffered an adverse employment action, Martinez relies on the fact that Donovan declined to extend the eligibility list in October 2020 and hired an outside employee to a vacant battalion chief position in March 2021. He also relies on Siefke's and Lee's negative performance appraisal.

The term "adverse employment action" is interpreted broadly to further the fundamental antidiscrimination purposes of FEHA. Thus, an employee is protected against unlawful discrimination with respect not only to ultimate employment actions such as termination or demotion, but also other employment actions that are reasonably likely to adversely and materially affect the employee's job performance or opportunity for advancement in his or her career. (*Yanowitz*, *supra*, 36 Cal.4th at pp. 1053–1054.)

With respect to Lee's and Siefke's performance appraisal of Martinez, we do not consider this evidence as Martinez made no

26

showing that the performance appraisal was in fact negative or that it negatively affected his ability to advance within the Fire Department. Rather, it was undisputed that Lee and Siefke rated Martinez "standard" in most categories and "above standard" in a few categories. Martinez provided no evidence that "standard" or "above standard" ratings are reasonably likely to adversely and materially affect Martinez's job performance or opportunity for advancement. (*Yanowitz, supra,* 36 Cal.4th at pp. 1053–1054.)

However, we find Donovan's refusal to extend the eligibility list when Martinez was the only remaining candidate and respondents' hiring of an outside employee for the vacant battalion chief position (even if that position was temporary) was sufficient evidence for a trier of fact to conclude Martinez suffered an adverse employment action. A trier of fact could find that Donovan's refusal to extend the eligibility list when Martinez was the only remaining candidate, and respondents' decision to hire an outside employee to cover a vacant battalion chief position adversely affected Martinez's opportunity for advancement; thus, constituting an adverse employment action. (*Yanowitz, supra,* 36 Cal.4th at p. 1054.) This inference is supported by the fact that both Martinez and Siefke were temporarily placed in a battalion chief position to decide whether they were ready for a promotion. Moreover, Donovan's decision to not extend the eligibility list effectively precluded Martinez from filling the temporary position to show he was ready to become a battalion chief. Thus, by not extending the promotion list and not giving Martinez another opportunity to work as a battalion chief, even if only temporarily, respondents effectively cut off any further

opportunity for Martinez to be promoted, i.e., to advance in his career.

We also conclude Martinez established a triable issue of fact on whether there was a causal link between the protected activity and respondents' actions. Martinez offered evidence that Donovan declined to extend the eligibility list several months after Martinez made his official complaints. This evidence was sufficient to meet his prima facie burden for purposes of summary judgment. (See *Castro-Ramirez v. Dependable Highway Express, Inc.* (2016) 2 Cal.App.5th 1028, 1049 [finding the proximity between plaintiff's complaints and the adverse employment action combined with plaintiff's evidence that defendant's actions were pretextual was sufficient to defeat summary judgment on retaliation cause of action].)

Respondents then offered legitimate nonretaliatory reasons for the adverse employment action; specifically, Martinez's poor performance as acting battalion chief and lack of characteristics identified by Donovan as those are necessary for a promotion to battalion chief. Respondents also offered evidence that Donovan did not anticipate any additional battalion chief openings which would have made extending the eligibility list necessary. The burden thus shifts to Martinez to create a triable issue of fact on whether respondents engaged in intentional retaliation. (*Yanowitz, supra*, 36 Cal.4th at p. 1042.)

We conclude Martinez offered sufficient evidence for a trier of fact to potentially conclude respondents' actions were intentional retaliation. First, there was temporal proximity of Martinez's protected activity and respondents' adverse employment actions to support an inference that respondents intentionally retaliated against Martinez. Martinez made his

28

first official complaint regarding the alleged misuse of consent decree funds in April 2020 and the battalion chief eligibility list was not extended six months later in October 2020. (See *George v. California Unemployment Ins. Appeals Bd.* (2009) 179 Cal.App.4th 1475, 1492 [describing four months as "relatively close timing," from which supporting inferences of retaliatory animus could be drawn].) Second, there was evidence that Donovan knew of the complaints and that he was also the subject of the complaints. (See *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 388 [a causal link may be established by showing employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision].) Third, Martinez presented evidence that respondents refused to extend the eligibility list when Martinez was potentially the only qualified candidate within the Fire Department to fill any potential vacant battalion chief position. (See *id.* at p. 389.) Finally, the Association claimed that Donovan violated established protocols by hiring an outsider for the temporary battalion chief position over a Fire Department employee, a category that included Martinez. (See *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005.)

We conclude this evidence was sufficient to create a triable issue of fact under section 12940, subdivision (h).

**C.    Martinez's cause of action for retaliation under Labor Code section 1102.5**

Martinez makes similar arguments as to why summary adjudication was improperly granted with respect to his Labor Code section 1102.5 retaliation cause of action. For the reasons discussed above, we find Martinez sufficiently established his

prima facie case for retaliation, and created a triable issue of fact regarding his allegation that respondents' legitimate reasons were pretextual. Nevertheless, because FEHA retaliation claims and Labor Code section 1102.5 retaliation claims have different standards, we discuss Martinez's Labor Code section 1102.5 claim separately here.

### 1.    Governing law

Labor Code section 1102.5 is " 'California's general whistleblower statute.' " (*Hawkins v. City of Los Angeles* (2019) 40 Cal.App.5th 384, 392 (*Hawkins*).) "That section prohibits an employer from retaliating against an employee for disclosing to a government or law enforcement agency a violation of state or federal statute. [Citation.] The section reflects a public policy of encouraging workplace whistleblowers to report unlawful acts without fear of retaliation." (*Ibid.*) "To establish a violation, a plaintiff must make a prima facie case of retaliation. To do that, plaintiff must show he engaged in protected activity, his employer subjected him to an adverse employment action, and the existence of a causal link between the two." (*Id.* at pp. 392–393.) Once the plaintiff demonstrates by a preponderance of the evidence that his engagement in a protected activity was a contributing factor in the alleged prohibited action, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged a protected activity. (Lab. Code, § 1102.6.) "The plaintiff must then show that the explanation is a pretext for the retaliation." (*Hawkins,* at p. 393.)

### 2.    Analysis

Here, as discussed in section B above, Martinez met his prima facie burden to show he engaged in protected activity, suffered an adverse employment action, and established a causal link between the two.

Assuming respondents' evidence of legitimate nonretaliatory reasons for allowing the eligibility list to lapse and declining to promote Martinez to the temporarily vacant battalion chief position met the clear and convincing standard under the Labor Code, the burden shifts to Martinez to prove retaliatory animus.

For the reasons discussed above, we find Martinez sufficiently created a triable issue of fact on whether respondents acted with retaliatory animus.  Specifically, the proximity in time between Martinez's complaints and Donovan's decision to not extend the eligibility list; that Donovan knew of and was the subject of Martinez's complaints; that Donovan refused to extend the eligibility list when Martinez was the only remaining candidate; and that Donovan chose a nonemployee to serve as the temporary battalion chief.

For these reasons, we find the trial court erred in granting summary adjudication on Martinez's retaliation cause of action under Labor Code section 1102.5.

## II.    Demurrer to Martinez's cause of action for harassment under section 12940, subdivision (j)(1)

Last, Martinez argues the trial court abused its discretion when it sustained respondents' demurrer without leave to amend as to his cause of action for harassment under section 12940, subdivision (j)(1).  Again, we agree with Martinez.

31

### A. Standard of review

"A demurrer tests the legal sufficiency of the complaint. We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action.  For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law.  We also consider matters that may be judicially noticed.  [Citation.] When a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.'  [Citation.]  Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action." (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1608–1609, fn. omitted.)

### B. Governing law

Section 12940, subdivision (j)(1), makes it unlawful for an employer to harass an employee based on age.  (See *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 705–706 (*Roby*).) "[H]arassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." (*Id*. at p. 706.) To establish a prima facie case for harassment, the plaintiff must show (1) he was a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his protected status; (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) the

defendant is liable for the harassment. (*Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 876 (*Thompson*).)

" ' "[H]arassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. . . . [¶] . . . [¶] . . . [C]ommonly necessary personnel management actions . . . do not come within the meaning of harassment. . . ." ' " (*Roby*, *supra*, 47 Cal.4th at p. 707, quoting *Reno v. Baird* (1998) 18 Cal.4th 640, 645–647.) "Nevertheless, official employment actions [may constitute] the *evidentiary basis* of the harassment cause of action, because the supervisor used those official actions as his means of conveying his offensive message." (*Roby*, at p. 708.) "[I]n some cases the hostile message that constitutes the harassment is conveyed through official employment actions, and therefore evidence that would otherwise be associated with a discrimination claim can form the basis of a harassment claim." (*Ibid.*)

## C.     Analysis

Here, Martinez does not argue that his allegations were sufficient to state a cause of action for harassment; however, he argues the trial court abused its discretion in denying him leave to amend.

"It is well established that 'California courts have "a policy of great liberality in allowing amendments at any stage of the proceeding so as to dispose of cases upon their substantial merits where the authorization does not prejudice the substantial rights of others." [Citation.] Indeed, "it is a rare case in which 'a court will be justified in refusing a party leave to amend his [or her] pleading so that he [or she] may properly present his [or her] case.' " [Citation.]' [Citation.] Thus, absent a showing of

prejudice to the adverse party, the rule of great liberality in allowing amendment of pleadings will prevail." (*Board of Trustees v. Superior Court* (2007) 149 Cal.App.4th 1154, 1163.)

Martinez responds he was entitled to add allegations of Donovan's ageist statements, that respondents' personnel management decisions were made for the purpose of harassing Martinez, the alleged actions were pervasive such that they would have unreasonably interfered with the work performance of a reasonable employee in the protected age group and so affected Martinez, and respondents' actions were motivated by age. We find these allegations are sufficient to meet Martinez's relatively low burden at the pleading stage and Martinez is entitled to amend his complaint.

Further, we are not persuaded by respondents' attempts to distinguish the facts here with authorities where the court found the evidence was insufficient to prove or at least create a triable issue of fact on whether plaintiff established a claim for harassment. Those cases were appeals from either a grant of summary judgment or a jury verdict. (*Roby*, *supra*, 47 Cal.4th at 692 [appeal from a jury verdict]; *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 451 [appeal from grant of summary judgment]; *Thompson*, *supra*, 186 Cal.App.4th at p. 880 [appeal from grant of summary adjudication].) Martinez was only required to allege the basic elements of a harassment claim and his proposed amendments are sufficient to show the trial court should have granted him leave to amend.

**DISPOSITION**

The judgment is reversed. Appellant shall recover his costs on appeal.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

GRIMES, J.